**Louis S. ZIMMERMAN and Janet Zimmerman, Appellants,**

v.

**CHICAGO TITLE INSURANCE COMPANY, Appellee.**

No. 03–98–00025–CV.

Court of Appeals of Texas, Austin.

June 17, 1999.

Publication Ordered Dec. 23, 1999.

Jon M. Smith, Austin, for Appellant.

Jeffrey L. Crouch, Donohoe, Jameson & Carroll, P.C., Dallas, for Appellee.

Before Justices JONES, KIDD and YEAKEL.

LEE YEAKEL, Justice.

The issue presented is whether appellee Chicago Title Insurance Company ("Chicago Title") owed a duty to defend its insureds, appellants Louis Zimmerman and Janet Zimmerman, in a separate case litigated in Travis County. On cross-motions for summary judgment,[1] the district court rendered judgment that Chicago Title had no duty to defend. We will affirm the district court's judgment.

In 1988, the Zimmermans purchased residential property in Austin and obtained a policy of insurance from Chicago Title insuring title to that property.[2] The policy obligates Chicago Title to defend the Zimmermans against any action in which a claim adverse to their title is asserted, unless the claim is based on matters excepted by the policy. In the separate litigation underlying this dispute, the Zimmermans were sued by the owners of adjoining property, Mary Joseph and her four daughters, who asserted title by adverse possession to a twelve- to twenty-inch strip of land insured under the Zimmermans' policy. Chicago Title refused the Zimmermans' request to defend them against the suit.

The Zimmermans sued Chicago Title for a declaration that it owed a duty under the policy to defend them in the underlying suit. The Zimmermans subsequently moved for partial summary judgment, asserting that Chicago Title had relied on four policy exclusions to refuse their defense, none of which applied. Chicago Title filed its own motion for summary judgment, arguing that each of the claimed exclusions justified its refusal to defend. Following a hearing, the district court rendered an order denying the Zimmermans' motion and granting summary judgment for Chicago Title.

■ By two issues on appeal, the Zimmermans challenge the district court's grant of Chicago Title's motion and the denial of their own motion. Whether Chicago Title owes a duty to defend the Zimmermans under their title insurance policy is a question of law. *State Farm Gen. Ins. Co. v. White*, 955 S.W.2d 474, 475 (Tex. App.—Austin 1997, no pet.). We therefore review the cross-motions for summary judgment to determine whether either Chicago Title or the Zimmermans established the right to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988).

■ To determine whether an insurer must defend its insured against a lawsuit, we read the factual allegations in the pleadings in light of the language of the policy. *Trinity Univ. Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex.1997). The focus is on the facts, not the legal theories, alleged. If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). By what is sometimes referred to as the

---

1. The Zimmermans' motion was for partial summary judgment declaring that Chicago Title owed the Zimmermans a duty to defend in the underlying case.

2. The policy was issued by Ticor Title Insurance Company of California. After Ticor issued the policy, Ticor was purchased by Chicago Title and is a wholly-owned subsidiary of Chicago Title.

"eight corners" rule, we do not look beyond the language of the policy and the allegations in the pleadings. *Id.* In a case of doubt as to whether the allegations state a cause of action within the coverage of a policy, we must construe the allegations in the insured's favor. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965).

■ The Zimmermans' policy excepts from coverage the "rights of parties in possession." Chicago Title asserted in its summary-judgment motion that this exception negated its duty to defend the Zimmermans in the underlying lawsuit. The exception for claims by parties in possession is a standard exception from coverage specifically relating to claims such as adverse possession. *See* 11 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 159.70, at 159–86 (1998 ed.). The rationale for the exception, at least in part, is that possession of land should put the insured on notice of an adverse interest. *See id.*

■ The character of possession sufficient to give an insured notice is that which is open, visible, unequivocal, exclusive, and actual rather than constructive. *Shaver v. National Title & Abstract Co.,* 361 S.W.2d 867, 869–70 (Tex.1962). Thus, power lines that extended onto the insureds' property from poles that were just off the property, but clearly visible, constituted possession sufficient to put the insureds on notice of a claim to possession. *Halvorson v. National Title & Abstract Co.,* 391 S.W.2d 112, 113–14 (Tex.Civ. App.—Tyler 1965, no writ); *see also Jupe v. City of Schertz,* 604 S.W.2d 405, 408 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.) (public's use of gravel road on insureds' property was sufficient possession). In contrast, a gas pipeline buried four feet beneath the insureds' land, with no sign of its presence on the surface, was not possession sufficient to give the insureds' notice of a claim to their property. *Shaver,* 361 S.W.2d at 869–70.

In the adverse-possession suit, members of the Joseph family alleged that they owned the property bordering the Zimmermans' to the north. Shortly after buying the property in 1936, plaintiff Mary Joseph and her husband built a picket fence along the southern boundary of the property. The fence extended from the end of an existing rock wall on the east to the southwestern corner of the property. Mr. and Mrs. Joseph landscaped the property up to the fence. The Josephs built the fence to mark the southern boundary of their property, and at all times while it stood, both they and the Zimmermans' predecessors-in-title treated the picket fence line as the boundary between the two properties.

Some time after 1965, the Josephs alleged, the fence was removed, but fence posts remained along the boundary line. At about the same time, the Zimmermans' immediate predecessors-in-title put up a chain-link fence along the back portion of the original picket fence. The chain-link fence and the rock wall continued to mark the boundary claimed by the Josephs. In the gap between the rock wall and the chain-link fence, the several fence posts remaining from the original picket fence were sawed close to the ground. Mrs. Joseph painted the tops of these fence posts white to continue to mark the boundary of her property. Until the Zimmermans purchased the property in 1988, the Josephs and the owners immediately preceding the Zimmermans continued to treat the former picket fence line as the boundary between their properties.

The Josephs further alleged that, when the Zimmermans bought the property, they obtained a survey. The survey clearly showed that both the rock wall and the chain-link fence lay inside the Zimmermans' property line. Nevertheless, the Josephs treated the old picket fence line, marked by the chain-link fence, the end of the rock wall, and the old fence posts in between, as the southern boundary of their property. Mrs. Joseph continued to land-

scape along the line, and before 1997 the Zimmermans made no attempt to use the strip of land between the old picket fence line and the survey line. Several years before the Josephs filed suit, the Zimmermans erected a lattice fence in the gap between the chain-link fence and the rock wall. This fence occupied substantially the same position as the old picket fence. Mrs. Joseph planted rose bushes on her side of the lattice fence. The Josephs claimed title to the strip of land by adverse possession. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.026 (West 1986 & Supp. 1999), .030 (West 1986).

We believe the Josephs alleged a character of possession that was sufficient to give notice to the Zimmermans of their claim. The Josephs specifically alleged that, after the picket fence was removed, fence posts remained in the ground marking the boundary they claimed. Although the posts were sawed close to the ground, Mrs. Joseph painted the tops white to show the boundary line, and the Josephs landscaped the property to that line. The owners immediately preceding the Zimmermans acquiesced in the Josephs' occupation of the strip of land by erecting a chain-link fence along the line of the former picket fence. The chain-link fence was present when the Zimmermans bought the property. The Zimmermans themselves put up a lattice fence along the old picket fence line between the rock wall and the chain-link fence, and Mrs. Joseph planted rose bushes on her side of the lattice fence. In sum, the Josephs alleged that they possessed the strip of land in a manner that was open, visible, unequivocal, and exclusive.

The Josephs' allegations of possession thus met the exception in the policy for the rights of parties in possession. Because Chicago Title asserted a ground in its motion that entitled it to judgment as a matter of law, the district court correctly rendered summary judgment in its favor. Chicago Title's entitlement to judgment on this ground necessarily foreclosed sum-

mary judgment in the Zimmermans' favor. We therefore overrule both the first and second issues raised by the Zimmermans.

We affirm the judgment of the district court.