COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-202-CV

 

WILLIAM
SMITH AND                                                         APPELLANTS

JEANIE FEENEY-SMITH 

 

                                                                                                        

 

                                                   V.

 

DAWN MCCARTHY AND                                                       APPELLEES

SECURITY UNION TITLE 

INSURANCE CO.

                                              ------------

 

                 FROM THE PROBATE
COURT OF DENTON COUNTY

 

                                              ------------

 

                                OPINION ON REHEARING

 

                                              ------------

On March 16, 2006, this Court issued an opinion
affirming the trial court=s judgment.  Appellants William Smith and Jeanie
Feeney-Smith filed a motion for rehearing. 
After due consideration, we deny the Smiths= motion
for rehearing, but we withdraw our opinion and judgment dated March 16, 2006,
and substitute the following.  The disposition,
however, remains unchanged.








I.  Facts
and Procedural History

This case arose out of a dispute regarding the
ownership of a strip of property between the Smiths= house
and Appellee Dawn McCarthy=s
house.  McCarthy moved into her house in
1970 and has lived there since then.  The
Smiths purchased their home in 1996.  The
houses are back-to-back.  For thirty-two
years, each house had its own backyard fence, and there was an open area of
roughly fifteen feet between the fences. 
This fifteen feet of land is subject to an easement in favor of Dallas
Power and Light Company and Southwestern Bell Telephone Company.








This portion of land was included in the legal
description of the Smiths= deed but not fenced in by their
backyard fence.  It contained a back
alley (referred to by the Smiths as a Aconcrete
pad@) on one
end, which McCarthy and her family used along with the grassy area next to
it.  This was McCarthy=s only
access to the main back alley, where she put her garbage, and her family
allegedly drove their cars into and out of the alley on almost a daily basis.  In March 2001, the Smiths surveyed their
property and decided to move their backyard fence outward to their property
line.  In March 2002, McCarthy filed a
trespass to try title suit, alleging that she owned the southern nine feet six
inches of this portion of land (the AStrip@)
through adverse possession. McCarthy alleged that the adverse possession
occurred between 1970 and 1980 (and thereafter), when the land at issue was
owned by the previous owners, and that the Smiths therefore never acquired
title to the Strip.  The Smiths filed an
answer alleging an affirmative defense that, pursuant to Section 16.030 of the
Texas Civil Practice and Remedies Code, McCarthy could not adversely possess
the Strip because it was dedicated to public use.[1]  They also filed a counterclaim, alleging that
even if McCarthy had obtained title to the Strip by adverse possession, they
subsequently reacquired title by adverse possession under the five-year statute
of limitations.[2]  They requested attorney=s fees
under Section 16.034 of the Texas Civil Practice & Remedies Code and
sanctions.








In May 2002, while the suit was pending, the
Smiths removed the concrete pad and erected a fence enclosing property,
including the disputed portion, and cutting off McCarthy=s access
to the alley.  The Smiths then brought a
third-party breach of warranty of title claim against their predecessors in
title.[3]  They also demanded that Appellee Security
Union Title Company (Security Union) provide a defense upon their title
insurance policy.  When Security Union
refused, the Smiths sued Security Union as a third-party defendant.

On May 15, 2004, McCarthy filed a nonsuit with
prejudice.  The Smiths then non-suited
all third-party defendants except for Security Union.  The Smiths and Security Union filed
cross-motions for summary judgment, and the Smiths moved for attorney=s fees
against McCarthy based on their previous request.  The trial court denied this motion and the
Smiths= motion
for summary judgment and granted Security Union=s motion
for summary judgment.

In two issues on appeal, the Smiths argue that 1)
the trial court erred in denying their counterclaim for attorney=s fees
against McCarthy after she took a nonsuit with prejudice because Appellants, as
a matter of law, were the prevailing party under Section 16.034 of the Texas
Civil Practice and Remedies Code and 2) the trial court erred in denying their
motion for summary judgment against Security Union and in granting Security
Union=s motion
for summary judgment because Security Union failed to establish an exception
under the title insurance policy that would relieve it of its duty to defend
them.

II. 
Attorney=s Fees Against McCarthy

In their first issue, the Smiths argue that the
trial court abused its discretion by denying their counterclaim for attorney=s fees
against McCarthy. 








A.  The Law

Section 16.034(a) of the Texas Civil Practice and
Remedies Code provides:

In a suit for the
possession of real property between a person claiming under record title to the
property and one claiming by adverse possession, if the prevailing party
recovers possession of the property from a person unlawfully in actual
possession, the court may award costs and reasonable attorney=s fees to the prevailing
party.[4]

 

When a statute states that a trial court Amay
award@
attorney=s fees,
such an award is discretionary.[5]  Thus, Section 16.034 provides for a
discretionary award of attorney=s fees,
which we review under an abuse of discretion standard.[6]








To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, whether the act was arbitrary
or unreasonable.[7]  Merely because a trial court may decide a
matter within its discretion in a different manner than an appellate court
would in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.[8]

An abuse of discretion does not occur where the
trial court bases its decisions on conflicting evidence.[9]  Furthermore, an abuse of discretion does not
occur as long as some evidence of substantive and probative character exists to
support the trial court=s decision.[10]

B. 
Analysis

1.  Written
Demand Argument

In their reply brief, the Smiths argue that the
trial court decided not to award attorney=s fees Anot
[based] upon his discretion,@ but
because it incorrectly interpreted the written demand provisions of Section
16.034.  They argue that the attorney=s fees
issue turned on whether the written demand provisions had been met.  The written demand provisions of Section
16.034 provide:








(b) To recover attorney=s fees, the person
seeking possession must give the person unlawfully in possession a written
demand for that person to vacate the premises. The demand must be given by
registered or certified mail at least 10 days before filing the claim for
recovery of possession.

 

(c) The demand must state that if the person
unlawfully in possession does not vacate the premises within 10 days and a
claim is filed by the person seeking possession, the court may enter a judgment
against the person unlawfully in possession for costs and attorney=s fees
in an amount determined by the court to be reasonable.[11]








We disagree that the trial court=s
decision so clearly resulted from Smiths= lack of
compliance with these provisions. 
Whether the written demand provisions were complied withCor even
had to be complied with in this caseCdid not
appear to be the sole issue before the trial court with regard to attorney=s
fees.  McCarthy=s
response to the request for attorney=s fees
contained several arguments.  While she
did argue that Smiths did not comply with the written demand provisions, she
also argued that A[p]erhaps a more central reason
why no award of attorney=s fees may be made under this
statute is that the award is only to the >prevailing
party.=@  In addition, at oral argument, although the
parties discussed the written demand provisions, McCarthy=s
attorney=s
closing argument focused on whether the Smiths could recover attorney=s fees
under the statute (meaning, whether they met the Aprevailing
party@
definition) even though there was no adjudication.  Also, neither the judgment nor the trial court=s ruling
explains why the trial court denied attorney=s fees
under section 16.034.  Therefore, we do
not assume that the court denied the Smiths= request
for attorney=s fees for the reason they
suggest, and we may uphold the denial on any legal theory supported by the
evidence.[12]

2.  No
Abuse of Discretion








Assuming without holding that attorney=s fees
could have been properly awarded to the Smiths under the statute, we will not
disturb the trial court=s denial of attorney=s fees
unless the trial court abused its discretion.[13]  At the November 16, 2004, combined hearing on
attorney=s fees
and the motion for sanctions, the trial court specifically denied attorney=s fees
under Section 16.034.  However, the trial
court expressed the belief that at some point during the course of trial and as
discovery continued, McCarthy=s
attorney learned that he had an impossible case but continued with the
suit.  The court thus stated that it was
granting the Smiths= motion for sanctions in part,
imposing sanctions from this unspecified point (when the attorney learned that
McCarthy=s claim
was groundless) onwards.  The court
requested the attorneys to submit in writing their damage calculation regarding
this time frame.  The court stated its
intent to make his order final when it received the calculations. 

The docket sheet notes that a motion for
determination of sanctions was granted on January 31, 2005, and sanctions
against McCarthy=s attorney were set, with an
order reflecting the amount to be tendered. 
The court=s judgment entered on May 4,
2005, indicates the denial of attorney=s fees
under Section 16.034, but does not mention sanctions.  According to the Smiths= brief,
they dismissed their amended motion for sanctions against McCarthy and her
attorney after the parties reached a settlement.  The terms of such settlement are not in the
record before us.








The Smiths have not met their burden of showing
that the trial court abused its discretion in denying their request for
attorney=s
fees.  In the hearing, the court made
clear that it felt that McCarthy=s
attorney should have nonsuited McCarthy=s claims
earlier than he did because he learned that the case would not be
successful.  However, it is possible that
the trial court deemed the sanctions that it initially ordered sufficient to
correct any injustice or unfairness that it felt occurred during the course of
trial and chose not to award attorney=s fees
on this basis.  The trial court even
stated to the Smith=s attorney that McCarthy=s
attorney Ais asking you to state, because
you seek attorney=s fees, at least
partly, on behalf of your clients, for actions you allege on his part violated
Rule 13 and Chapter 10.@ 
[Emphasis added.]

It is unclear what the trial court=s basis
for denying attorney=s fees was, and the Smiths did
not show that the decision was an abuse of discretion.  In fact, because the Smiths complain on
appeal that the statute should apply to them based on their interpretation of
its applicationCthat they were the prevailing
party as a matter of law, and that the prevailing party is Aentitled
to attorney=s fees@Cthey did
not examine the possibility that the trial court could have interpreted the
statute favorably as to them and nevertheless, in its discretion, still deny
attorney=s fees.

III. 
Security Union=s Duty
to Defend

In their second issue, the Smiths argue that the
trial court erred by denying their motion for summary judgment against Security
Union and by granting Security Union=s motion
for summary judgment because Security Union failed to establish an exception
under the title insurance policy that would relieve it of its duty to defend
Appellants.  We disagree.

A.  Standard
of Review








In a summary judgment case, the issue on appeal
is whether the movant met the summary judgment burden by establishing that no
genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.[14]  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.[15]

When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.[16]  Evidence that favors the movant=s
position will not be considered unless it is uncontroverted.[17]








When reviewing a summary judgment granted on
specific grounds, the summary judgment can only be affirmed if the ground on
which the trial court granted relief is meritorious.[18]  The summary judgment will be affirmed only if
the record establishes that the movant has conclusively proved all essential
elements of the movant=s cause of action or defense as
a matter of law.[19]     When both parties move for summary judgment
and the trial court grants one motion and denies the other, the reviewing court
should review both parties= summary
judgment evidence and determine all questions presented.[20]  The reviewing court should render the
judgment that the trial court should have rendered.[21]

B. 
Analysis

In their brief, the Smiths allege that the trial
court provided four reasons for holding that Security Union did not have a duty
to defend, including that appellate case law is Avastly
one-sided@ and Ahas
consistently favored enforcement of the exclusions in the title insurance policies.@  However, the trial court=s
written judgment expressly provides that the Smiths= motion
for summary judgment was denied and Security Union=s motion
for summary judgment was granted because Security Union established defenses
under exceptions (2) and (6)(g) of the policy.













Whether an insurer owes its insured a duty to
defend is a question of law.[22]  If a petition does not allege facts within
the scope of coverage, an insurer is not legally obligated to defend a suit
against its insured.[23]  Thus, the duty to defend is determined by the
allegations in the underlying pleadings and the language of the insurance
policy.[24]  This standard is referred to as the Aeight
corners@ rule.[25]  When we apply the Aeight
corners@ rule,
we give the allegations in the pleadings a liberal interpretation in favor of
the insured.[26]  In other words, Ain case
of doubt as to whether or not the allegations of a complaint against the
insured state a cause of action within the coverage of a liability policy
sufficient to compel the insurer to defend the action, such doubt will be
resolved in the insured=s favor.@[27]  The facts alleged in the pleadings against
the insured are presumed to be true when gauging the insurer=s duty
to defend.[28]  However, the court may not read facts into
the pleadings, look outside the pleadings, or Aimagine
factual scenarios which might trigger coverage.@[29]  A liability policy obligates the insurer to
defend the insured against any claim that could potentially be covered,
regardless of the claim=s merits.[30]  A duty to defend any of the claims against an
insured requires the insurer to defend the entire suit.[31]

In its motion for summary judgment, Security
Union argued that two exceptions to the policy precluded coverage and thus its
duty to defend. Exception (2) excludes coverage for losses and costs resulting
from A[a]ny
discrepancies, conflicts, or shortages in area or boundary lines, or any
encroachments or protrusions, or any overlapping of improvements.@  Exception (6)(g) excludes coverage for losses
and costs resulting from A[r]ights of parties in
possession.@ 
As noted, the trial court granted Security Union=s motion
and denied the Smiths= motion based on both of these
grounds.

1. 
Exception 6(g): The Parties in Possession Exception

As stated, exception 6(g) excludes coverage for
losses and costs resulting from A[r]ights
of parties in possession.@













In Shaver v. National Title & Abstract Co.,
the Texas Supreme Court held that the parties-in-possession exception
ultimately did not apply because one inspecting the premises could not see
anything that indicated there was a pipeline across and under the land, and
there was no indication of the location or existence of the pipeline.[32]  With regard to Athe
character and possession which will operate as notice to a purchaser of the
rights of purchasers,@ the court stated that A[i]n
order to operate as notice of a claim to the land occupied, possession must be
open and visible, notorious, exclusive and not merely constructive.@[33]  Because the Apossession@ of the
company holding the underground pipeline easement was not sufficient to give
notice of a claim, the exception did not apply and coverage existed under the
policy.[34]  The court discussed the duty to defend
briefly at the end of the opinion, stating that Ano
adverse claim or suit was ever asserted against plaintiffs which defendants
were required to defend.@[35]  However, the court held that because of the
policy=s
provision Arequiring the defendants to
defend litigation necessary to clear title,@ the
insureds were entitled to recover their attorney=s fees
incurred in litigating for removal of the easement.[36]









The Austin Court of Appeals recently addressed
the parties-in-possession exception in Zimmerman v. Chicago Title Insurance
Co.[37]  Stating that this exception Ais a
standard exception from coverage specifically relating to claims such as
adverse possession,@ the court noted that the
rationale for this exception is that possession of land should put the insured
on notice of an adverse interest.[38]  In the underlying suit in that case, the
Zimmermans= neighbors sued them, claiming
title by adverse possession to a strip of land insured under the Zimmermans= policy.[39]  The neighbors alleged that they owned the
property at issue because it lay outside the Zimmermans= fence
and within their own, and both they and the Zimmermans had treated the fence
line as the boundary between the two properties.[40]  The fence had been removed but was replaced,
and the neighbors landscaped the property up to this line.[41]  The Zimmermans=
insurance provider refused to defend them in the suit based on the Arights
of parties in possession exception.@[42]  The court held that the neighbors
sufficiently alleged that they possessed the strip in a manner that was open,
visible, unequivocal, and exclusive.[43]  AThe
[neighbors=] allegations of possession thus
met the exception in the policy for the rights of parties in possession.@[44]













In Cheverly Terrace Partnership v. Ticor Title
Insurance Co., the Maryland Court of Special Appeals decided a case very
similar to ours.[45]  In the underlying suit in that case, Cheverly
II sued Cheverly, claiming it had acquired a portion of land by adverse
possession.[46]  Unlike our case, the merits of the adverse
possession claim had been decided in the underlying suit: the trial court had
granted and the Court of Special Appeals had affirmed a summary judgment
against Cheverly II because it Afail[ed]
to see how mere use of the disputed property for parking and for access to the
apartment complex by unidentified tenants . . . [could] be said to amount to
possession.@[47]  In the subsequent suit against its insurance
provider to recover expenses in defending the underlying suit, Cheverly argued
that because Cheverly II was unable to establish the allegations of adverse
possession, it was not a Aparty in possession.@[48]  The Court of Special Appeals disagreed,
stating that A[t]he duty to defend under an
insurance policy is not determined by the facts ultimately proven in the
underlying suit.  Rather, an insurer=s duty
to defend is based on whether the allegations in the complaint potentially
bring the claim within the policy=s
coverage.@[49]  Because Cheverly II sued Cheverly and Aalleged
in its complaint that it was >in
physical possession= of a portion of Cheverly=s
parking lot and that its use of the lot had been >adverse,
open, exclusive, and continuous for over twenty years,=@ its
claims fell within the parties-in-possession exception.[50]  The Court of Special Appeals thus held that
the insurance provider did not owe Cheverly a defense.[51]

In the case before us, McCarthy=s
pleadings alleged, among other things, that she Ais the
owner, by adverse possession@ of the
Strip.  It continues:

For more than ten years,
[McCarthy] and her family held the Strip in peaceable and adverse possession,
cultivated, used and enjoyed the Strip, and maintained an actual and visible
appropriation of the Strip, commenced and continued under a claim of right that
was inconsistent with and was hostile to the claim of the titleholders of [the
Smiths= property].  The owner of [Smiths= property] at that time,
. . . knew and believed that [McCarthy] and her family owned the Strip. . .
.  [McCarthy] and her family used the
driveway on the Strip openly, exclusively, continuously and uninterruptedly
from 1970 to 2002.  On an almost daily
basis in that period, [McCarthy] and her family used the driveway to drive cars
onto and off of their property and into the adjacent alley as their principal
means of entering and leaving their home. . . . [McCarthy] and her family also
maintained and used the grassy portion of the Strip openly, exclusively,
continuously, and uninterruptedly from 1970 to 2002.  In the years between 1970 and 1980 virtually
no one other than the McCarthys and their lawn service made any use of the
Strip . . . .  Their maintenance included pulling weeds,
planting grass, watering and mowing the grass, pruning the trees in the Strip
and keeping the area clean of debris. 
They also used the grassy portion of the Strip for extra parking,
storing of firewood, automobile repair, painting household objects, children=s clubhouse and playground
from 1970 to 2002.  Thus, [McCarthy] now
owns full title to the Strip . . . .

 








Viewing McCarthy=s
pleadings, her allegations of possession meet the exception in the policy for
the rights of parties in possession, regardless of whether she would have
actually prevailed on the claim.[52]








Although the Smiths cite the Texas Supreme Court=s Shaver
case and other cases (from lower courts and a court outside of our
jurisdiction) for the proposition that we should look beyond the eight corners
to see if the exclusion applies, we decline to do so.[53]  The facts of the Shaver case differ
from this case and most duty to defend cases: 
the insured filed the pleadings in the underlying suit, as
compared to a third party filing pleadings against the insured.[54]  The court discussed the Aundisputed
facts@ in the
record, but did not indicate that they came from sources other than the
pleadings.[55]  The court did not discuss the duty to defend
except in connection with attorney=s fees,
and did not specify that it was creating an exception toCor even
mentionCthe
eight-corners rule.[56]








It has very recently been noted that A[t]he
Texas Supreme Court has never recognized an exception to the strict
eight-corners rule so as to allow courts to examine extrinsic evidence in
determining an insurer=s duty to defend.@[57]  Considering that the Texas Supreme Court has
relied on the eight-corners doctrine in a duty-to-defend case as recently as
2004,[58]
we continue to follow the eight-corners rule until that court instructs us
otherwise.  Based on the pleadings and
the insurance policy alone, McCarthy has alleged a cause of action excluded
from coverage under Security Union=s policy
by the parties-in-possession exception. 
Therefore, Security Union did not have a duty to defend the Smiths in
the underlying suit against McCarthy.  We
do not address whether the other alleged exception would apply.[59]  We overrule the Smiths= second
issue.

IV. 
Conclusion

Because we have overruled both of the Smiths= issues,
we affirm the trial court=s judgment.

 

LEE ANN DAUPHINOT

JUSTICE

PANEL B:   DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED:  May 4, 2006











[1]Tex. Civ. Prac. & Rem.
Code Ann. ' 16.030 (Vernon 2002). 
In relevant part, this section provides that A[a]
person may not acquire through adverse possession any right or title to real
property dedicated to public use.@  Id.  ' 16.030(b).





[2]Tex. Civ. Prac. & Rem.
Code Ann. ' 16.025 (Vernon 2002).





[3]One of the predecessors in title died, which is why
the case was before a probate court.





[4]Tex. Civ. Prac. & Rem.
Code Ann. ' 16.034(a) (Vernon 2002) (emphasis added).





[5]Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex. 1998).





[6]Ridge Oil Co. Inc. v. Guinn Invs., Inc., 148 S.W.3d 143, 163 (Tex. 2004); Bocquet,
972 S.W.2d at 20-21; In re T.D.C., 91 S.W.3d 865, 876 (Tex. App.CFort
Worth 2002, pet. denied).





[7]Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert.
denied, 476 U.S. 1159 (1986).





[8]Id.





[9]Davis v. Huey,
571 S.W.2d 859, 862 (Tex. 1978); see also Goode v. Shoukfeh, 943 S.W.2d
441, 446 (Tex. 1997).





[10]Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002).





[11]Tex. Civ. Prac. & Rem.
Code ann. ' 16.034(b), (c).





[12]Sharp v. Hobart Corp., 957 S.W.2d 650, 654 (Tex. App.CAustin 1997, no pet.) (citing In re W.E.R., 669
S.W.2d 716, 717 (Tex. 1984)).





[13]Ridge Oil Co.,
148 S.W.3d at 163; Bocquet, 972 S.W.2d at 20-21; In re T.D.C., 91
S.W.3d at 876.





[14]Tex. R. Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73
S.W.3d 211, 215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979).





[15]Sw. Elec. Power Co., 73 S.W.3d at 215.





[16]Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).





[17]Great Am. Reserve Ins. Co. v. San Antonio Plumbing
Supply Co., 391 S.W.2d 41, 47 (Tex.
1965).





[18]Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625-26 (Tex. 1996).





[19]Clear Creek Basin, 589 S.W.2d at 678.





[20]FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).





[21]Id.





[22]State Farm Lloyds v. Kessler, 932 S.W.2d 732, 736 (Tex. App.CFort
Worth, 1996 writ denied).





[23] Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997).





[24]Id.





[25]Id.





[26]Id.





[27]Id. (quoting
Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 26
(Tex. 1965)).





[28]Gehan Homes, Ltd. v. Employers Mut. Cas. Co., 146 S.W.3d 833, 838 (Tex. App.CDallas
2004, pet. filed) (citing Heyden Newport Chem. Corp., 387 S.W.2d
at 24).





[29]Merchs. Fast Motor Lines, 939 S.W.2d at 142.





[30]Heyden Newport Chem. Corp., 387 S.W.2d at 26.





[31]CU Lloyds of Tex. v. Main Street Homes, Inc., 79 S.W.3d 687, 692 (Tex. App.CAustin
2002, no pet.); Stumph v. Dallas Fire Ins. Co., 34 S.W.3d 722, 728 (Tex.
App.CAustin 2000, no pet.); Pro‑Tech Coatings,
Inc. v. Union Standard Ins. Co., 897 S.W.2d 885, 892 (Tex. App.CDallas
1995, no writ).

 





[32]Shaver v. Nat=l Title & Abstract Co., 361 S.W.2d 867, 869, 871 (Tex. 1962), overruled
on other grounds, S. Title Guar. Co., v. Prendergast, 494 S.W.2d
154, 158 (Tex. 1973).





[33]Id. at 869
(citing 31 Tex. Jur. 368, ' 7).





[34]Id. at 870.





[35]Id.





[36]Id. at 871.





[37]Zimmerman v. Chicago Title Ins. Co., 28 S.W.3d 584, 586 (Tex. App.CAustin
1999, no pet.).





[38]Id. (citing
11 Lee R. Russ & Thomas F. Segalla,
Couch on Insurance 3d ' 159.70, at 159-186 (1998 ed.)).





[39]Id. at 585.





[40]Id.





[41]Id. at
586-87.





[42]Id. at 586.





[43]Id. at 587.





[44]Id.





[45]See generally Cheverly Terrace P=ship
v. Ticor Title Ins. Co., 642 A.2d 285
(Md. App. 1994); see also Panciocco v. Lawyers Title Ins. Corp., 794
A.2d 810, 814 (N.H. 2002).





[46]Cheverly Terrace P=ship, 642 A.2d at 286.





[47]Id.





[48]Id. at 288.





[49]Id. at 288
(citing St. Paul Fire & Marine Ins. Co. v. Pryseski, 438 A.2d 282,
282 (Md. App. 1981)).





[50]Id. at 289.





[51]Id.





[52]See id.;
Kessler, 932 S.W.2d at 736.





[53]See generally Shaver, 361 S.W.2d at 867.  The
Smiths also cite Morgan v. Chicago Title Co., 65 Fed. Appx. 184 (9th
Cir. 2003) (not designated for publication); State Farm Fire &
Cas. Co. v. Wade, 827 S.W.2d 448 (Tex. App.CCorpus Christi 1992, writ denied); Jupe v. City of
Schertz, 604 S.W.2d 405 (Tex. App.CSan Antonio 1980, writ refused, n.r.e.); Halvorson
v. Nat=l Title and Abstract Co., 391 S.W.2d 112 (Tex. App.CTyler
1965, no writ).





[54]Shaver, 361
S.W.2d at 869.  This court has even
classified the eight-corners rule as follows: 
A[a]n insurer=s duty to defend its insured is determined according
to the >eight corners= rule, which requires that we compare the allegations
in the petition filed against the insured and the insurance policy.@   Transport Intern. Pool, Inc. v.
Continental Ins. Co., 166 S.W.3d 781, 784 (Tex. App.CFort
Worth 2005, no pet.).





[55]Shaver, 361
S.W.2d at 869-71.





[56]Id. at
870-71.





[57]Chapman v. Nat=l Union Fire Ins. Co. of Pittsburgh, 171 S.W.3d 222, 230 (Tex. App.CHouston
[1st Dist.] 2005, no pet.) (citing Landmark Chevrolet Corp. v. Universal
Underwriters Ins. Co., 121 S.W.3d 886, 890 (Tex. App.CHouston
[1st Dist.] 2003, pet. filed)).





[58]See Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 200 (Tex. 2004).





[59]See Tex. R. App. P. 47.1.