William SMITH and Jeanie Feeney–
Smith, Appellants,

v.

Dawn McCARTHY and Security Union
Title Insurance Co., Appellees.

No. 2–05–202–CV.

Court of Appeals of Texas,
Fort Worth.

May 4, 2006.

Rehearing Overruled June 1, 2006.

Robert Harms Bliss, Dallas, for appellants.

Eugene Zemp DuBose, Dallas and Paul D. Pruitt, Security Union Title Insurance Co., Irving, for appellees.

PANEL B: DAUPHINOT, WALKER, and McCOY, JJ.

## OPINION ON REHEARING

LEE ANN DAUPHINOT, Justice.

On March 16, 2006, this Court issued an opinion affirming the trial court's judgment. Appellants William Smith and Jeanie Feeney–Smith filed a motion for rehearing. After due consideration, we deny the Smiths' motion for rehearing, but we withdraw our opinion and judgment dated March 16, 2006, and substitute the following. The disposition, however, remains unchanged.

### I. Facts and Procedural History

This case arose out of a dispute regarding the ownership of a strip of property between the Smiths' house and Appellee Dawn McCarthy's house. McCarthy moved into her house in 1970 and has lived there since then. The Smiths purchased their home in 1996. The houses are back-to-back. For thirty-two years, each house had its own backyard fence, and there was an open area of roughly fifteen feet between the fences. This fifteen feet of land is subject to an easement in favor of Dallas

Power and Light Company and Southwestern Bell Telephone Company.

This portion of land was included in the legal description of the Smiths' deed but not fenced in by their backyard fence. It contained a back alley (referred to by the Smiths as a "concrete pad") on one end, which McCarthy and her family used along with the grassy area next to it. This was McCarthy's only access to the main back alley, where she put her garbage, and her family allegedly drove their cars into and out of the alley on almost a daily basis.

In March 2001, the Smiths surveyed their property and decided to move their backyard fence outward to their property line. In March 2002, McCarthy filed a trespass to try title suit, alleging that she owned the southern nine feet six inches of this portion of land (the "Strip") through adverse possession. McCarthy alleged that the adverse possession occurred between 1970 and 1980 (and thereafter), when the land at issue was owned by the previous owners, and that the Smiths therefore never acquired title to the Strip. The Smiths filed an answer alleging an affirmative defense that, pursuant to Section 16.030 of the Texas Civil Practice and Remedies Code, McCarthy could not adversely possess the Strip because it was dedicated to public use.[1] They also filed a counterclaim, alleging that even if McCarthy had obtained title to the Strip by adverse possession, they subsequently reacquired title by adverse possession under the five-year statute of limitations.[2] They requested attorney's fees under Section 16.034 of the Texas Civil Practice & Remedies Code and sanctions.

---

1. TEX. CIV. PRAC. & REM.CODE ANN. § 16.030 (Vernon 2002). In relevant part, this section provides that "[a] person may not acquire through adverse possession any right or title to real property dedicated to public use." *Id.* § 16.030(b).

2. TEX. CIV. PRAC. & REM.CODE ANN. § 16.025 (Vernon 2002).

In May 2002, while the suit was pending, the Smiths removed the concrete pad and erected a fence enclosing property, including the disputed portion, and cutting off McCarthy's access to the alley. The Smiths then brought a third-party breach of warranty of title claim against their predecessors in title.[3] They also demanded that Appellee Security Union Title Company (Security Union) provide a defense upon their title insurance policy. When Security Union refused, the Smiths sued Security Union as a third-party defendant.

On May 15, 2004, McCarthy filed a nonsuit with prejudice. The Smiths then nonsuited all third-party defendants except for Security Union. The Smiths and Security Union filed cross-motions for summary judgment, and the Smiths moved for attorney's fees against McCarthy based on their previous request. The trial court denied this motion and the Smiths' motion for summary judgment and granted Security Union's motion for summary judgment.

In two issues on appeal, the Smiths argue that 1) the trial court erred in denying their counterclaim for attorney's fees against McCarthy after she took a nonsuit with prejudice because Appellants, as a matter of law, were the prevailing party under Section 16.034 of the Texas Civil Practice and Remedies Code and 2) the trial court erred in denying their motion for summary judgment against Security Union and in granting Security Union's motion for summary judgment because Security Union failed to establish an exception under the title insurance policy that would relieve it of its duty to defend them.

## II. Attorney's Fees Against McCarthy

In their first issue, the Smiths argue that the trial court abused its discretion by denying their counterclaim for attorney's fees against McCarthy.

### A. The Law

■ Section 16.034(a) of the Texas Civil Practice and Remedies Code provides:

> In a suit for the possession of real property between a person claiming under record title to the property and one claiming by adverse possession, if the prevailing party recovers possession of the property from a person unlawfully in actual possession, the court *may award* costs and reasonable attorney's fees to the prevailing party.[4]

When a statute states that a trial court "may award" attorney's fees, such an award is discretionary.[5] Thus, Section 16.034 provides for a discretionary award of attorney's fees, which we review under an abuse of discretion standard.[6]

■ To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.[7] Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circum-

---

3. One of the predecessors in title died, which is why the case was before a probate court.

4. TEX. CIV. PRAC. & REM.CODE ANN. § 16.034(a) (Vernon 2002) (emphasis added).

5. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998).

6. *Ridge Oil Co. Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex.2004); *Bocquet*, 972 S.W.2d at 20–21; *In re T.D.C.*, 91 S.W.3d 865, 876 (Tex.App.-Fort Worth 2002, pet. denied).

7. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

stance does not demonstrate that an abuse of discretion has occurred.[8]

■■ An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence.[9] Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision.[10]

### B. Analysis

#### 1. Written Demand Argument

■ In their reply brief, the Smiths argue that the trial court decided not to award attorney's fees "not [based] upon his discretion," but because it incorrectly interpreted the written demand provisions of Section 16.034. They argue that the attorney's fees issue turned on whether the written demand provisions had been met. The written demand provisions of Section 16.034 provide:

(b) To recover attorney's fees, the person seeking possession must give the person unlawfully in possession a written demand for that person to vacate the premises. The demand must be given by registered or certified mail at least 10 days before filing the claim for recovery of possession.

(c) The demand must state that if the person unlawfully in possession does not vacate the premises within 10 days and a claim is filed by the person seeking possession, the court may enter a judgment against the person unlawfully in possession for costs and attorney's fees

in an amount determined by the court to be reasonable.[11]

We disagree that the trial court's decision so clearly resulted from Smiths' lack of compliance with these provisions. Whether the written demand provisions were complied with—or even had to be complied with in this case—did not appear to be the sole issue before the trial court with regard to attorney's fees. McCarthy's response to the request for attorney's fees contained several arguments. While she did argue that Smiths did not comply with the written demand provisions, she also argued that "[p]erhaps a more central reason why no award of attorney's fees may be made under this statute is that the award is only to the 'prevailing party.'" In addition, at oral argument, although the parties discussed the written demand provisions, McCarthy's attorney's closing argument focused on whether the Smiths could recover attorney's fees under the statute (meaning, whether they met the "prevailing party" definition) even though there was no adjudication. Also, neither the judgment nor the trial court's ruling explains why the trial court denied attorney's fees under section 16.034. Therefore, we do not assume that the court denied the Smiths' request for attorney's fees for the reason they suggest, and we may uphold the denial on any legal theory supported by the evidence.[12]

#### 2. No Abuse of Discretion

■ Assuming without holding that attorney's fees could have been properly awarded to the Smiths under the statute,

8. *Id.*

9. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex. 1978); *see also Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997).

10. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 211 (Tex.2002).

11. TEX. CIV. PRAC. & REM.CODE ANN. § 16.034(b), (c).

12. *Sharp v. Hobart Corp.,* 957 S.W.2d 650, 654 (Tex.App.-Austin 1997, no pet.) (citing *In re W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984)).

we will not disturb the trial court's denial of attorney's fees unless the trial court abused its discretion.[13] At the November 16, 2004, combined hearing on attorney's fees and the motion for sanctions, the trial court specifically denied attorney's fees under Section 16.034. However, the trial court expressed the belief that at some point during the course of trial and as discovery continued, McCarthy's attorney learned that he had an impossible case but continued with the suit. The court thus stated that it was granting the Smiths' motion for sanctions in part, imposing sanctions from this unspecified point (when the attorney learned that McCarthy's claim was groundless) onwards. The court requested the attorneys to submit in writing their damage calculation regarding this time frame. The court stated its intent to make his order final when it received the calculations.

The docket sheet notes that a motion for determination of sanctions was granted on January 31, 2005, and sanctions against McCarthy's attorney were set, with an order reflecting the amount to be tendered. The court's judgment entered on May 4, 2005, indicates the denial of attorney's fees under Section 16.034, but does not mention sanctions. According to the Smiths' brief, they dismissed their amended motion for sanctions against McCarthy and her attorney after the parties reached a settlement. The terms of such settlement are not in the record before us.

The Smiths have not met their burden of showing that the trial court abused its discretion in denying their request for attorney's fees. In the hearing, the court made clear that it felt that McCarthy's attorney should have nonsuited McCarthy's claims earlier than he did because he learned that the case would not be successful. However, it is possible that the trial court deemed the sanctions that it initially ordered sufficient to correct any injustice or unfairness that it felt occurred during the course of trial and chose not to award attorney's fees on this basis. The trial court even stated to the Smith's attorney that McCarthy's attorney "is asking you to state, *because you seek attorney's fees*, at least partly, on behalf of your clients, for actions you allege on his part violated Rule 13 and Chapter 10." [Emphasis added.]

It is unclear what the trial court's basis for denying attorney's fees was, and the Smiths did not show that the decision was an abuse of discretion. In fact, because the Smiths complain on appeal that the statute should apply to them based on their interpretation of its application—that they were the prevailing party as a matter of law, and that the prevailing party is "entitled to attorney's fees"—they did not examine the possibility that the trial court could have interpreted the statute favorably as to them and nevertheless, in its discretion, still deny attorney's fees.

## III. Security Union's Duty to Defend

In their second issue, the Smiths argue that the trial court erred by denying their motion for summary judgment against Security Union and by granting Security Union's motion for summary judgment because Security Union failed to establish an exception under the title insurance policy that would relieve it of its duty to defend Appellants. We disagree.

### A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the

---

13. *Ridge Oil Co.*, 148 S.W.3d at 163; *Bocquet,* 972 S.W.2d at 20–21; *In re T.D.C.,* 91 S.W.3d at 876.

summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[14] The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.[15]

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[16] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[17]

When reviewing a summary judgment granted on specific grounds, the summary judgment can only be affirmed if the ground on which the trial court granted relief is meritorious.[18] The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.[19]

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented.[20] The reviewing court should render the judgment that the trial court should have rendered.[21]

## B. Analysis

In their brief, the Smiths allege that the trial court provided four reasons for holding that Security Union did not have a duty to defend, including that appellate case law is "vastly one-sided" and "has consistently favored enforcement of the exclusions in the title insurance policies." However, the trial court's written judgment expressly provides that the Smiths' motion for summary judgment was denied and Security Union's motion for summary judgment was granted because Security Union established defenses under exceptions (2) and (6)(g) of the policy.

Whether an insurer owes its insured a duty to defend is a question of law.[22] If a petition does not allege facts within the scope of coverage, an insurer is not legally obligated to defend a suit against its insured.[23] Thus, the duty to defend is determined by the allegations in the underlying pleadings and the language of the insurance policy.[24] This standard is referred to as the "eight corners" rule.[25] When we apply the "eight corners" rule, we give the allegations in the pleadings a liberal interpretation in favor of the in-

14. Tex.R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

15. *Sw. Elec. Power Co.,* 73 S.W.3d at 215.

16. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005).

17. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex. 1965).

18. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625–26 (Tex.1996).

19. *Clear Creek Basin,* 589 S.W.2d at 678.

20. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000).

21. *Id.*

22. *State Farm Lloyds v. Kessler,* 932 S.W.2d 732, 736 (Tex.App.-Fort Worth, 1996 writ denied).

23. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex. 1997).

24. *Id.*

25. *Id.*

sured.[26] In other words, "in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor." [27] The facts alleged in the pleadings against the insured are presumed to be true when gauging the insurer's duty to defend.[28] However, the court may not read facts into the pleadings, look outside the pleadings, or "imagine factual scenarios which might trigger coverage." [29] A liability policy obligates the insurer to defend the insured against any claim that could potentially be covered, regardless of the claim's merits.[30] A duty to defend any of the claims against an insured requires the insurer to defend the entire suit.[31]

 In its motion for summary judgment, Security Union argued that two exceptions to the policy precluded coverage and thus its duty to defend. Exception (2) excludes coverage for losses and costs resulting from "[a]ny discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements." Exception (6)(g) excludes coverage for losses and costs resulting from "[r]ights of parties in possession." As noted, the trial court

granted Security Union's motion and denied the Smiths' motion based on both of these grounds.

### 1. Exception 6(g): The Parties in Possession Exception

As stated, exception 6(g) excludes coverage for losses and costs resulting from "[r]ights of parties in possession."

In *Shaver v. National Title & Abstract Co.*, the Texas Supreme Court held that the parties-in-possession exception ultimately did not apply because one inspecting the premises could not see anything that indicated there was a pipeline across and under the land, and there was no indication of the location or existence of the pipeline.[32] With regard to "the character and possession which will operate as notice to a purchaser of the rights of purchasers," the court stated that "[i]n order to operate as notice of a claim to the land occupied, possession must be open and visible, notorious, exclusive.and not merely constructive." [33] Because the "possession" of the company holding the underground pipeline easement was not sufficient to give notice of a claim, the exception did not apply and coverage existed under the policy.[34] The court discussed the duty to defend briefly at the end of the opinion, stating that "no adverse claim or suit was

26. *Id.*

27. *Id.* (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

28. *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 838 (Tex.App.-Dallas 2004, pet. filed) (*citing Heyden Newport Chem. Corp.*, 387 S.W.2d at 24).

29. *Merchs. Fast Motor Lines*, 939 S.W.2d at 142.

30. *Heyden Newport Chem. Corp.*, 387 S.W.2d at 26.

31. *CU Lloyd's of Tex. v. Main Street Homes, Inc.*, 79 S.W.3d 687, 692 (Tex.App.-Austin 2002, no pet.); *Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 728 (Tex.App.-Austin 2000, no pet.); *Pro–Tech Coatings, Inc. v. Union Standard Ins. Co.*, 897 S.W.2d 885, 892 (Tex.App.-Dallas 1995, no writ).

32. *Shaver v. Nat'l Title & Abstract Co.*, 361 S.W.2d 867, 869, 871 (Tex.1962), *overruled on other grounds, S. Title Guar. Co., v. Prendergast*, 494 S.W.2d 154, 158 (Tex.1973).

33. *Id.* at 869 (citing 31 Tex. Jur. 368, § 7).

34. *Id.* at 870.

ever asserted against plaintiffs which defendants were required to defend." [35] However, the court held that because of the policy's provision "requiring the defendants to defend litigation necessary to clear title," the insureds were entitled to recover their attorney's fees incurred in litigating for removal of the easement.[36]

The Austin Court of Appeals recently addressed the parties-in-possession exception in *Zimmerman v. Chicago Title Insurance Co.*[37] Stating that this exception "is a standard exception from coverage specifically relating to claims such as adverse possession," the court noted that the rationale for this exception is that possession of land should put the insured on notice of an adverse interest.[38] In the underlying suit in that case, the Zimmermans' neighbors sued them, claiming title by adverse possession to a strip of land insured under the Zimmermans' policy.[39] The neighbors alleged that they owned the property at issue because it lay outside the Zimmermans' fence and within their own, and both they and the Zimmermans had treated the fence line as the boundary between the two properties.[40] The fence had been removed but was replaced, and the neighbors landscaped the property up to this line.[41] The Zimmermans' insurance provider refused to defend them in the suit based on the "rights of parties in possession exception."[42] The court held that the neighbors sufficiently alleged that they possessed the strip in a manner that was open, visible, unequivocal, and exclusive.[43] "The [neighbors'] allegations of possession thus met the exception in the policy for the rights of parties in possession."[44]

In *Cheverly Terrace Partnership v. Ticor Title Insurance Co.*, the Maryland Court of Special Appeals decided a case very similar to ours.[45] In the underlying suit in that case, Cheverly II sued Cheverly, claiming it had acquired a portion of land by adverse possession.[46] Unlike our case, the merits of the adverse possession claim had been decided in the underlying suit: the trial court had granted and the Court of Special Appeals had affirmed a summary judgment against Cheverly II because it "fail[ed] to see how mere use of the disputed property for parking and for access to the apartment complex by unidentified tenants ... [could] be said to amount to possession."[47] In the subsequent suit against its insurance provider to recover expenses in defending the underlying suit, Cheverly argued that because Cheverly II was unable to establish the allegations of adverse possession, it was not a "party in possession."[48] The Court

---

**35.** *Id.*

**36.** *Id.* at 871.

**37.** *Zimmerman v. Chicago Title Ins. Co.*, 28 S.W.3d 584, 586 (Tex.App.-Austin 1999, no pet.).

**38.** *Id.* (citing 11 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 159.70, at 159–186 (1998 ed.)).

**39.** *Id.* at 585.

**40.** *Id.*

**41.** *Id.* at 586–87.

**42.** *Id.* at 586.

**43.** *Id.* at 587.

**44.** *Id.*

**45.** *See generally Cheverly Terrace P'ship v. Ticor Title Ins. Co.*, 100 Md.App. 606, 642 A.2d 285 (1994); *see also Panciocco v. Lawyers Title Ins. Corp.*, 147 N.H. 610, 794 A.2d 810, 814 (2002).

**46.** *Cheverly Terrace P'ship*, 642 A.2d at 286.

**47.** *Id.*

**48.** *Id.* at 288.

of Special Appeals disagreed, stating that "[t]he duty to defend under an insurance policy is not determined by the facts ultimately proven in the underlying suit. Rather, an insurer's duty to defend is based on whether the allegations in the complaint potentially bring the claim within the policy's coverage."[49] Because Cheverly II sued Cheverly and "alleged in its complaint that it was 'in physical possession' of a portion of Cheverly's parking lot and that its use of the lot had been 'adverse, open, exclusive, and continuous for over twenty years,'" its claims fell within the parties-in-possession exception.[50] The Court of Special Appeals thus held that the insurance provider did not owe Cheverly a defense.[51]

In the case before us, McCarthy's pleadings alleged, among other things, that she "is the owner, by adverse possession" of the Strip. It continues:

> For more than ten years, [McCarthy] and her family held the Strip in peaceable and adverse possession, cultivated, used and enjoyed the Strip, and maintained an actual and visible appropriation of the Strip, commenced and continued under a claim of right that was inconsistent with and was hostile to the claim of the titleholders of [the Smiths' property]. The owner of [Smiths' property] at that time, ... knew and believed that [McCarthy] and her family owned the Strip.... [McCarthy] and her family used the driveway on the Strip openly, exclusively, continuously

and uninterruptedly from 1970 to 2002. On an almost daily basis in that period, [McCarthy] and her family used the driveway to drive cars onto and off of their property and into the adjacent alley as their principal means of entering and leaving their home.... [McCarthy] and her family also maintained and used the grassy portion of the Strip openly, exclusively, continuously, and uninterruptedly from 1970 to 2002. In the years between 1970 and 1980 virtually no one other than the McCarthys and their lawn service made any use of the Strip.... Their maintenance included pulling weeds, planting grass, watering and mowing the grass, pruning the trees in the Strip and keeping the area clean of debris. They also used the grassy portion of the Strip for extra parking, storing of firewood, automobile repair, painting household objects, children's clubhouse and playground from 1970 to 2002. Thus, [McCarthy] now owns full title to the Strip....

Viewing McCarthy's pleadings, her allegations of possession meet the exception in the policy for the rights of parties in possession, regardless of whether she would have actually prevailed on the claim.[52]

Although the Smiths cite the Texas Supreme Court's *Shaver* case and other cases (from lower courts and a court outside of our jurisdiction) for the proposition that we should look beyond the eight corners to see if the exclusion applies, we decline to do so.[53] The facts of the *Shaver* case

**49.** *Id.* at 288 (citing *St. Paul Fire & Marine Ins. Co. v. Pryseski,* 292 Md. 187, 438 A.2d 282, 282 (Md.App.1981)).

**50.** *Id.* at 289.

**51.** *Id.*

**52.** *See id.; Kessler,* 932 S.W.2d at 736.

**53.** *See generally Shaver,* 361 S.W.2d at 867. The Smiths also cite *Morgan v. Chicago Title Co.,* 65 Fed.Appx. 184 (9th Cir.2003) (not designated for publication); *State Farm Fire & Cas. Co. v. Wade,* 827 S.W.2d 448 (Tex. App.-Corpus Christi 1992, writ denied); *Jupe v. City of Schertz,* 604 S.W.2d 405 (Tex.App.-San Antonio 1980, writ refused, n.r.e.); *Halvorson v. Nat'l Title and Abstract Co.,* 391 S.W.2d 112 (Tex.App.-Tyler 1965, no writ).

differ from this case and most duty to defend cases: the *insured* filed the pleadings in the underlying suit, as compared to a third party filing pleadings *against* the insured.[54] The court discussed the "undisputed facts" in the record, but did not indicate that they came from sources other than the pleadings.[55] The court did not discuss the duty to defend except in connection with attorney's fees, and did not specify that it was creating an exception to—or even mention—the eight-corners rule.[56]

It has very recently been noted that "[t]he Texas Supreme Court has never recognized an exception to the strict eight-corners rule so as to allow courts to examine extrinsic evidence in determining an insurer's duty to defend."[57] Considering that the Texas Supreme Court has relied on the eight-corners doctrine in a duty-to-defend case as recently as 2004,[58] we continue to follow the eight-corners rule until that court instructs us otherwise. Based on the pleadings and the insurance policy alone, McCarthy has alleged a cause of action excluded from coverage under Security Union's policy by the parties-in-possession exception. Therefore, Security Union did not have a duty to defend the Smiths in the underlying suit against McCarthy. We do not address whether the other alleged exception would apply.[59] We overrule the Smiths' second issue.

## IV. Conclusion

Because we have overruled both of the Smiths' issues, we affirm the trial court's judgment.

---

**54.** *Shaver*, 361 S.W.2d at 869. This court has even classified the eight-corners rule as follows: "[a]n insurer's duty to defend its insured is determined according to the 'eight corners' rule, which requires that we compare the allegations in the petition *filed against the insured* and the insurance policy." *Transport Intern. Pool, Inc. v. Continental Ins. Co.*, 166 S.W.3d 781, 784 (Tex.App.-Fort Worth 2005, no pet.).

**55.** *Shaver*, 361 S.W.2d at 869–71.

**56.** *Id.* at 870–71.

**57.** *Chapman v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 171 S.W.3d 222, 230 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (citing *Landmark Chevrolet Corp. v. Universal Underwriters Ins. Co.*, 121 S.W.3d 886, 890 (Tex. App.-Houston [1st Dist.] 2003, pet. filed)).

**58.** *See Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 200 (Tex.2004).

**59.** *See* Tex.R.App. P. 47.1.