COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-249-CV

 

 

PLAYOFF CORPORATION, DONRUSS                             APPELLANTS
AND

PLAYOFF, L.P., DONRUSS
LLC, AND                                       APPELLEES

ANN (BLAKE) POWELL

 

                                                   V.

 

LAWRENCE BLACKWELL                                                  APPELLEE AND

                                                                                        APPELLANT

 

                                              ------------

 

           FROM THE 141ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                OPINION ON REHEARING

 

                                              ------------

After reviewing appellee/cross appellant,
Lawrence Blackwell=s motion for rehearing and/or
motion for en banc reconsideration, we deny the motions.  We withdraw our December 11, 2008 opinion and
judgment and substitute the following.








This is a breach of employment-contract
case.  The key issue is whether the oral
employment contract in question is unenforceably indefinite as a matter of
law.  We hold that it is, and we affirm
the trial court=s take-nothing judgment
notwithstanding the verdict on Lawrence Blackwell=s breach
of contract claim against Playoff Corp., Donruss Playoff, L.P., Donruss LLC,
and Ann Powell (collectively, Athe
defendants@).  We also affirm the trial court=s denial
of the defendants= motion for attorney=s fees
under the Texas Commission on Human Rights Act.

                                            Background

The jury heard six days of testimony from
fourteen witnesses, and the trial court admitted approximately 1,200 pages of
exhibits into evidence.  The following
summary reflects only the evidence essential to our resolution of this appeal.

Powell founded Playoff Corp., a sports
trading-card company, in 1992.  In 1997,
Playoff hired Blackwell as a consultant for $1,500 per day.  A few months later, Powell and Blackwell
began a romantic relationship, which continued until February 2002.  








In December 1999, Playoff hired Blackwell as an
employee, and Powell appointed him to serve as Playoff=s
president.  The terms of Blackwell=s
employment agreement are the crux of this case. 
According to Blackwell, he and Powell orally agreed to the following
eight terms:

1.     Playoff
would employ Blackwell;

 

2.     Playoff
would not pay Blackwell $600,000 in consulting fees that it allegedly owed to
him;

 

3.     Playoff
would pay Blackwell a lower salary than he would have earned as a consultant;

 

4.     Blackwell
would not engage in business opportunities with other companies or
organizations in which he, in reasonable probability, would otherwise have had
an opportunity to engage;

 

5.     Blackwell
would loan money to Playoff and entities contemplated to be formed by the
parties;[1]

 

6.     Blackwell
would sign personal guaranties for loans made to Playoff and entities
contemplated to be formed by the parties;

 

7.     Playoff
and Powell would pay Blackwell 25% of the proceeds from the sale of Playoff or
entities contemplated to be formed by the parties, if any, after reducing the
proceeds from the sale by $5,000,000.00 (Playoff=s agreed fair market
value at the time of the alleged employment agreement); or 25% of the fair
market value of Playoff or entities contemplated to be formed by the parties,
if any, after reducing the fair market value by $5,000,000.00, on the last day
of his employment if Playoff or any entity contemplated to be formed by the
parties terminated Blackwell=s employment; and








8.     Playoff
and Powell would pay Blackwell 25% of any distributions made by Playoff or any
entity contemplated to be formed by the parties after payment of taxes owed by
Powell arising from the operation of Playoff or any entity contemplated to be
formed by the parties, if any. 

 

Blackwell testified that he and Powell shook hands over the deal but
did not memorialize the agreement in writing. 
Powell denied the existence of any agreement whatsoever, calling
Blackwell=s testimony regarding the
handshake deal Aa complete lie.@  

Blackwell continued to work for Playoff and
related entities until November 2002, during which time the Playoff entities
greatly increased in value.  The parties
hotly contested whether Blackwell resigned or Powell terminated his employment.

Blackwell sued the defendants for sexual
harassment under the Texas Commission on Human Rights Act (TCHRA), alleging
that Powell terminated him when he refused to rekindle their romantic
relationship.  He later added claims for
breach of contract, fraud, and breach of fiduciary duty and nonsuited his TCHRA
claims.  The defendants filed a motion
for attorney=s fees and costs under
TCHRA.  The parties tried Blackwell=s claims
to a jury and submitted the issue of TCHRA attorney=s fees
to the court. 








The trial court granted a directed verdict in
favor of Donruss on Blackwell=s breach
of contract claim and in favor of all the defendants on his fraud claim.  The jury found that Blackwell and Powell
agreed to the eight terms set forth above and that Playoff and Powell failed to
comply with the agreement.  It also found
that Blackwell did not resign and did not engage in any misconduct that
justified his termination.  With regard
to breach of contract damages, the trial court instructed the jury to consider
only the following element:

Twenty-five (25%) of the
fair market value of Playoff Corporation, Donruss Playoff, LP and Donruss LLC
(after reducing the fair market value by $5,000,000.00) on the last day of
Lawrence Blackwell=s employment, if any,
with Donruss, LLC, Donruss Playoff, LP, or Playoff Corporation. 

 

The jury returned a verdict on breach of contract damages of
$6,100,000.  

The trial court first rendered judgment for
Blackwell for $6,100,000, but then granted Powell and Playoff=s motion
for judgment notwithstanding the verdict and rendered a take-nothing
judgment.  In the order granting Powell
and Playoff=s motion for judgment
notwithstanding the verdict, the trial court stated,

[T]he court is of the
opinion that Plaintiff Blackwell should take nothing by way of his claims
against any Defendant.  The alleged oral
agreement found by the jury in Question 1 is legally unenforceable.  In particular, but not by way of limitation,
the Court finds that the alleged oral agreement found by the jury in Question 1
is insufficiently definite as a matter of law. 
The jury=s finding in Question 1
cannot support a recovery in favor of Plaintiff Blackwell against any
Defendant. 

 








The trial court also denied the defendants= motion
for attorney=s fees under TCHRA.  Blackwell appeals from the judgment not
withstanding the verdict, and the defendants appeal from the trial court=s denial
of their motion for TCHRA attorney=s fees.

                                        Blackwell=s Appeal

1.               
Standard
of review.

A
trial court may disregard a jury verdict and render judgment notwithstanding
the verdict (AJNOV@) if no evidence supports the jury findings on issue
necessary to liability or if a directed verdict would have been proper.  See Tex. R. Civ. P. 301; Tiller v.
McLure, 121 S.W.3d 709, 713 (Tex. 2003); Fort Bend County Drainage Dist.
v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991).  A directed verdict is proper only under
limited circumstances: (1) when the evidence conclusively establishes the right
of the movant to judgment or negates the right of the opponent; or (2) when the
evidence is insufficient to raise a material fact issue.  Prudential Ins. Co. v. Fin. Review Servs.,
Inc., 29 S.W.3d 74, 77 (Tex. 2000); Ray v. McFarland, 97 S.W.3d 728,
730 (Tex. App.CFort Worth 2003, no pet.).  








To
determine whether the trial court erred by rendering a JNOV, we view the
evidence in the light most favorable to the verdict under the well-settled
standards that govern legal sufficiency review. 
See Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex.
2003).  The standard for reviewing a
judgment notwithstanding the verdict, like all other motions rendering judgment
as a matter of law, requires a reviewing court to credit evidence favoring the
jury verdict if reasonable jurors could and disregard contrary evidence unless
reasonable jurors could not.  Cent.
Ready Mix Concrete Co. v. Islas, 228 S.W.3d 649, 651 (Tex. 2007). 

2.               
Is
the alleged employment contract unenforceably indefinite?

In
his fourth issue, Blackwell argues that the trial court erred by granting
judgment notwithstanding the verdict becauseCcontrary to the trial court=s statement in the order granting Powell=s motion for JNOVCthe alleged employment contract is
not too indefinite to enforce.  The
defendants argue that eight indefinite terms in the agreement, including Afair market value,@ render the whole unenforceably
vague.

A
contract is legally binding only if its terms are sufficiently definite to
enable a court to understand the parties= obligations.  Fort
Worth ISD v. City of Fort Worth, 22 S.W.3d 831, 846 (Tex. 2000). AThe rules regarding indefiniteness of
material terms of a contract are based on the concept that a party cannot
accept an offer so as to form a contract unless the terms of that contract are
reasonably certain.@  
Id. 








A
contract is sufficiently definite if a court is able to determine the
respective legal obligations of the parties. 
T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221
(Tex. 1992).  Contract terms are
reasonably certain Aif they provide a basis for
determining the existence of a breach and for giving an appropriate remedy.@ 
Restatement (Second) of Contracts ' 33(2) (1981). 
If an alleged agreement is so indefinite as to make it impossible for a
court to fix the legal obligations and liabilities of the parties, it cannot
constitute an enforceable contract.  See
id. 

An agreement to make a future contract is
enforceable only if it is Aspecific
as to all essential terms, and no terms of the proposed agreement may be left
to future negotiations.@ 
Fort Worth ISD, 22 S.W.3d at 846 (quoting Foster v. Wagner,
343 S.W.2d 914, 920B21 (Tex. Civ. App.CEl Paso
1961, writ ref=d n.r.e.)).  AIt is
well settled law that when an agreement leaves material matters open for future
adjustment and agreement that never occur, it is not binding upon the parties
and merely constitutes an agreement to agree.@  Id.

Whether an agreement fails for indefiniteness is
a question of law to be determined by the court.  COC Servs., Ltd. v. CompUSA, Inc., 150
S.W.3d 654, 664 (Tex. App.CDallas
2004, pet. denied); see also T.O. Stanley Boot Co., 847 S.W.2d at 222.













The question here is whether the term Afair
market value@ as used in the alleged
agreement is unenforceably indefinite; that is, whether Athe fair
market value of Playoff Corporation or entities contemplated to be formed by
the parties, if any . . . on the last day of [Blackwell=s]
employment@ is reasonably certain and
provides a basis for giving an appropriate remedy.[2]  See Restatement (Second) of Contracts ' 33(2).  Several Texas courts have held that the fair
market value of a company is a measure of damages to be resolved by the fact
finder.  See Willis v. Donnelly,
199 S.W.3d 262, 275 n.24 (Tex. 2006) (holding fair market value of stock shares
is the appropriate measure of damages when employer breaches agreement to
compensate employee with stock); Miga v. Jensen, 96 S.W.3d 207, 215
(Tex. 2002) (same); Bowers Steel, Inc. v. De Brooke, 557 S.W.2d 369, 371
(Tex. Civ. App.CSan Antonio 1977, no writ)
(same).  The pattern jury charge also
uses the term Avalue@ in an
instruction on benefit-of-the bargain contract damages.  See Comm. on Pattern Jury Charges, State
Bar of Texas, Texas Pattern Jury Charges: Business, Consumer, Insurance,
Employment  PJC 110.3 (2006).  Courts in some other jurisdictions have held
that Afair
market value@ is sufficiently definite as a
price term in an option contract to support an action for specific
performance.  See, e.g., Coodwest
Rubber Corp. v. Munoz, 216 Cal. Rptr. 604, 604B05 (Cal.
Ct. App. 1985) (collecting cases from several states).

But just because Afair
market value@ is an appropriate measure of
damages to be determined by the jury in some cases and sufficiently definite as
a contract term in some contexts does not mean that every contract containing
the phrase is sufficiently definite to be enforced.  In the context of this case, the only
evidence of an alleged agreement containing the phrase Afair
market value@ came from Blackwell=s
testimony.  

Blackwell acknowledged that they did not have an
understanding as to how market value was to be determined in 1999.  And the evidence shows that even Blackwell
realized the parties needed to agree on a valuation method during later
negotiations.  In a document dated March
27, 2002, and titled AProposals for a Working
Arrangement for Larry Blackwell and Ann Blake,@
Blackwell wrote,

If company is sold or I
am no longer with the company for any reason: Receive 25% of sale amount or
value as determined by formula (formula or methodology still needs to be
determined) on an after-tax basis, less the amount of $1,250,000.00 (which
equals 25% of the $5 million threshold).

 








[Emphasis added.]  Likewise, in
an email dated October 25, 2002, Blackwell wrote, A[I]
believe this is where we left off [the employment contract discussions] some
time ago, with the major unresolved element being the valuation methodology
at the time of my departure.@
[Emphasis added]  








Blackwell characterized the documents and emails
in 2000 and 2002 as proposing Areplacement
deals,@ not as
describing the 1999 oral agreement.  He
said they Ashook hands@ on the
1999 oral agreement, and, although Powell had said she would put it in writing,
she never did.  In 2000, he explained,
Powell had become more comfortable with the Aequity@ concept[3]
and thus asked him to call Playoff=s
attorneys and see if they could reach a Areplacement
deal.@  Another reason for a Areplacement
deal,@ he
said, was for potential tax advantages for Powell.  In 2002, he said, Powell wanted to pull money
out of the business and delay payment of his 25 percent.  It wasn=t that
she did not want to pay him, Blackwell said, but that she wanted to Apostpone
it for some time.@ 

Except for the provisions of the proposals that
would have provided Blackwell some equity interest, nothing in the documents,
emails, or Blackwell=s testimony indicates that the
proposed Areplacement@
agreements were any different from the 1999 oral agreement with respect to
valuing the entities.  And the documents
and emails are uncontradicted.  It is
inescapable that even Blackwell contemplated that fair market value of the
entities would be determined by a specific formula yet to be determined by
additional negotiation and agreement between the parties. 








Though the evidence that the method of valuation
remained to be determined might be considered contrary to the jury=s
verdict, neither a reasonable jury nor a court could ignore it.  See Cent. Ready Mix Concrete Co., 228
S.W.3d at 651 (citing City of Keller v. Wilson, 168 S.W.3d 802, 821
(Tex. 2005) (holding court must consider evidence that jury could not disregard
that is contrary to verdict in no-evidence review)).  Moreover, Blackwell=s
uncontroverted admissions in these statements are not contrary to and do not
conflict with the jury=s finding of the agreement in
answer to Question No. 1.  Instead, his
admissions establish that, in addition to the terms agreed upon, the agreement
would ultimately contain an additional term on which the parties had not yet
reached an agreementBhow to determine fair market
value of the companies in the event his employment was terminated.  AEvidence
is not conflicting just because the parties cannot agree to it.  For example, . . . evidence showing the terms
of one loan does not conflict with undisputed evidence that the parties never
reached an agreement regarding the terms of another.@  City of Keller, 168 S.W.3d at 821
(citing T.O. Stanley Boot Co., 847 S.W.2d at 222)).  

In other words, Blackwell=s
admissions show that, at most, the alleged agreement left a material matter
open for future adjustment and agreement that never occurred.  See Fort Worth ISD, 22 S.W.3d at
846.  Because this evidence established
that the parties never reached an agreement on an additional material term, the
agreement fails for Aindefiniteness@ as a matter
of law.  See T.O. Stanley Boot Co.,
847 S.W.2d at 222.    








The Tennessee court of appeals held an agreement
too indefinite to enforce under similar facts in Four Eights, LLC v. Salem,
194 S.W.3d 484 (Tenn. Ct. App. 2005). 
There, the parties entered into a lease agreement with an option to
purchase the leased premises for Aits then
fair market value.@ 
Id. at 486.  The lease
further provided that A[t]he Fair Market Value must be
determined by the Lessor and Lessee, negotiating in good faith . . . .@  Id. 
When the lessee sued the lessor to enforce the purchase option, the
trial court ruled that the agreement was too indefinite to enforce.  Id. 
The court of appeals affirmed, holding that while Afair
market value@ has a common meaning, the lease
provision that fair market value must be determined through good-faith
negotiation was an unenforceable agreement to agree: 

[I]f the parties had
simply utilized the term Afair market value,@ then the Court could
have ascertained the same based on common usage.  By adding the provision that AFair Market Value must
be determined by the Lessor and Lessee, negotiating in good faith@ . . .
, the parties basically made an Aagreement to agree@ to something in the
future, and such agreements have generally been held unenforceable, both in
this jurisdiction and others.

 

Id.; see also Connor v. Harless, 626 S.E.2d
755, 758 (N.C. Ct. App. 2006) (holding lease agreement with option to purchase
premises at Afair market value@ based
on two appraisals too indefinite to enforce because agreement did not contain
additional provisions stating how to proceed if appraisals produced vastly
different values).













Blackwell argues that the term Afair
market value@ is sufficiently definite
because the term is defined by an IRS revenue ruling and because expert
testimony defined the term at trial.[4]  Contracts are presumed to incorporate
regulations and laws existing at the time of execution.  Houston Lighting & Power Co. v. R.R.
Comm=n of Tex., 529
S.W.2d 763, 766 (Tex. 1975).  Blackwell
points to Revenue Ruling 56-60 as defining the term Afair
market value.@ 
See Rev. Rul. 56-60, 1959 -1 C.B. 237.  Revenue Ruling 56-60 concerns the valuation
of closely held corporations for estate and gift tax purposes.  Id. '1.  Although Blackwell contends that ruling 56-60
defines the term Afair market value,@ it is
more accurate to say that ruling 56-60 provides an approach to or guidelines
for determining fair market value.  See
id. ' 3 (captioned AApproach
to Valuation@).  Section 2.02 notes that the Estate Tax
Regulations and the Gift Tax Regulations Adefine
fair market value, in effect, as the price at which the property would change
hands between a willing buyer and a willing seller when the former is not under
any compulsion to buy and the latter is not under any compulsion to sell, both
parties having reasonable knowledge of relevant facts.@  Id. '
2.02.  But section 3.01 goes on to
observe that A[n]o formula can be devised that
will be generally applicable to the multitude of different valuation issues,@ and
section 7 notes that Avaluations cannot be made on the
basis of a prescribed formula@ and
that Athere is
no means whereby the various applicable factors in a particular case can be
assigned mathematical weights in deriving the fair market value.@  Id. '' 3.01,
7.

As in Four Eights, LLC, had the parties
simply utilized the term Afair market value@ in the
alleged agreement, then the court and jury could have ascertained the same
based on its common meaning.  See Four
Eights, LLC, 194 S.W.3d at 486.  But
Blackwell acknowledged that he an Powell did not have an understanding of how
fair market value would be calculated with regard to the 1999 agreement, and
the parties= later negotiationsCas
established by Blackwell=s own written admissionsCshow
that the method of valuation was a Amajor
unresolved element.@ 
Without an agreed method of calculating fair market value, the 1999
agreement as found by the jury was unenforceably indefinite as a matter of
law.  See Fort Worth ISD, 22
S.W.3d at 846; COC Servs., Ltd., 150 S.W.3d at 664.   We therefore hold that the trial court did
not err by granting JNOV, and we overrule Blackwell=s fourth
issue.  Having overruled his fourth
issue, we need not consider his other issues, in which he attacks the
alternative bases for JNOV asserted in the defendants= JNOV
motion.  See Tex. R. App. P. 47.1.

                           Powell,
Playoff, and Donruss=s Appeal

In a single cross-issue, the defendants argue
that the trial court abused its discretion by denying their motion for attorney=s fees
under TCHRA.








TCHRA provides that A[i]n a
proceeding under this chapter, a court may allow the prevailing party,
other than the commission, a reasonable attorney=s fee as
part of the costs.@ 
Tex. Lab. Code Ann. '
21.259(a) (Vernon 2006) (emphasis added). 
When a statute states that a trial court Amay@ award
attorney=s fees,
such an award is discretionary and we review the trial court=s ruling
under the abuse of discretion standard.  Smith
v. McCarthy, 195 S.W.3d 301, 304 (Tex. App.CFort
Worth 2006, pet. denied); Winters v. Chubb & Son, Inc., 132 S.W.3d
568, 580 (Tex. App.CHouston [14th Dist.] 2004, no
pet.).  A trial court abuses its
discretion when it acts without reference to any guiding rules and
principles.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241B42 (Tex.
1985), cert. denied, 476 U.S. 1159 (1986).








Texas courts of appeals that have addressed
attorney=s fees
under TCHRA have followed federal precedent, under which an employer may
recover attorney=s fees if the plaintiff=s claims
were frivolous, meritless, or unreasonable or the plaintiff continued to
litigate after it became clear that his claim was frivolous.  See, e.g., Elgaghil v. Tarrant County
Junior College, 45 S.W.3d 133, 145 (Tex. App.CFort
Worth 2000, pet. denied).  Attorney=s fees
are not appropriate under TCHRA simply because the plaintiff loses his case.  Id. (citing Christiansburg Garment Co.
v. EEOC, 434 U.S. 412, 420, 98 S. Ct. 694, 700 (1978)).  Rather, to show that a lawsuit was without
merit, the defendant must establish that the case was groundless or without
foundation.  Id. (affirming trial
court=s award
of attorney=s fees to TCHRA defendant when
defendant established that plaintiff=s claims
were groundless as a matter of law). 
Under the equivalent federal law, a defendant is not a prevailing party
when a plaintiff voluntarily dismisses his claim, unless the defendant can
demonstrate that the plaintiff withdrew to avoid a disfavorable judgment on the
merits.  Dean v. Riser, 240 F.3d
505, 511 (5th Cir. 2001); see also Butler v. MBNA Tech. Inc., No.
Civ. 3:02‑CV‑1715‑H, 2004 WL 389101, at *4B5 (N.D.
Tex. March 1, 2004)  (awarding attorney=s fees
under Title VII when plaintiff nonsuited claims in face of motion for summary
judgment).

In Dean, the fifth circuit court of
appeals, bemoaning the Asmall and almost infinitesimal
universe of reported cases in which civil rights plaintiffs voluntarily dismiss
their claims to avoid judgment on the merits,@ offered
the following guidance to aid federal district courts in determining whether
such dismissals warrant an award of attorney=s fees:








Upon the defendant=s motion, the court must
determine that the plaintiff=s case was voluntarily dismissed to avoid
judgment on the merits.  Once this
affirmative determination has been made, the defendant must then establish that
the plaintiff=s suit was frivolous, groundless,
or without merit.  Ordinarily, these
inquiries can be resolved from the record developed in the case before the
court, supplemented by affidavits and, only if necessary, testimonial evidence.  Additional relevant evidence includes but is
not limited to information concerning discovery delays and abuses, slothful
prosecution, negative rulings, and sanctions against the plaintiffs. Upon
reaching the above two conclusions, the district court may then in its
discretion award the defendant attorney=s fees under ' 1988.

 

Dean, 240 F.3d at 511.

Blackwell sued the defendants under TCHRA for
sexual harassment in the form of unwanted sexual advances, requests to engage
in a sexual relationship, requests for sexual favors, and improper questions
regarding his activities and relationships outside the office; retaliation; and
sex  discrimination.  He nonsuited his TCHRA claims the day before
a hearing on the defendants= motion
for summary judgment on his TCHRA claims. 
The defendants filed a motion for attorney=s fees
under TCHRA some months later. 








During trial, the trial court heard extensive testimony
about both the employment and romantic relationships between Blackwell and
Powell.  Blackwell and Powell both
testified that they had an exclusive, sexual relationship and lived together
from shortly after Powell hired Blackwell in 1997 until February 2002.  They both testified about several instances
when they renewed their romantic relationship after February 2002, but they
disagreed about who instigated the reconciliations.  Blackwell testified that Powell terminated
his employment in November 2002 when she learned that he was romantically
involved with another woman.  Powell
testified that she did not fire Blackwell. 
When asked, A[I]f [Blackwell] was still in a
personal relationship with you, he=d still
be working there, right?@ she answered, AAs far
as I would be concerned, that opportunity would still be available.@ 

After the jury trial on Blackwell=s
claims, the trial court held a hearing on the defendants= motion
for attorney=s fees.  The defendants offered evidence of attorney=s fees
incurred in defending against Blackwell=s TCHRA
claims in the amount of $618,554.  When
the trial court granted JNOV as to Donruss, it also awarded $618,554 in
attorney=s fees
to Donruss under TCHRA and made findings of fact and conclusions of law in
support of the award.  But after hearing
additional arguments, the trial court vacated its prior judgment and findings
of fact and conclusions of law, rendered a final take-nothing JNOV in favor of
all defendants, and denied the defendants= motion
for TCHRA attorney=s fees.  Because the trial court vacated its findings
of fact, we must assume that it found all facts necessary to support its denial
of the defendants= motion for attorney=s fees.  See Pharo v. Chambers County, 922
S.W.2d 945, 948 (Tex. 1996).  








The defendants argue that the trial court abused
its discretion by denying their motion for attorney=s fees
because they were the prevailing parties on Blackwell=s TCHRA
claims.  Blackwell responds that his
nonsuit of the TCHRA claims was a strategic decision, not an effort to avoid an
adverse judgment on the merits.

Although this court has not previously reviewed a
trial court=s denial of a defendant=s motion
for attorney=s fees under TCHRA, we have
previously reviewed the denial of attorney=s fees
under another statute that gives a trial court the discretion to award fees to
a prevailing party.  In Smith v.
McCarthy, the appellant argued that the trial court abused its discretion
by denying the appellant=s motion for attorney=s fees
under civil practice and remedies code section 16.034(a), which provides:

In a suit for the
possession of real property . . . , if the prevailing party recovers possession
of the property from a person unlawfully in actual possession, the court may
award costs and reasonable attorney=s fees to the prevailing party.

 








Tex. Civ. Prac. & Rem. Code Ann. '
16.034(a) (Vernon 2002) (emphasis added); Smith, 195 S.W.3d at 304.  We held that the appellant did not meet his
burden of showing that the trial court abused its discretion by denying his
request for attorneys=s fees because the trial court=s basis
for denying attorney=s fees was unclear.  Smith, 195 S.W.3d at 304.  We further noted that because section 16.034(a)
makes the award of fees discretionary Cjust
like TCHRACthe trial court could have
determined that the appellant was the prevailing party as a matter of law but,
in its discretion, decided to deny attorney=s fees
anyway.  Id.

Likewise, in this case the basis for the trial
court=s denial
of attorney=s fees is unclear.  Under the Dean guidelines, the trial
court could have determined that Blackwell did not voluntarily dismiss his
TCHRA claims to avoid judgment on the merits; or it could have determined that
Blackwell=s TCHRA claims were not
frivolous, groundless, or without merit; orCeven if
it found the two foregoing factors in the defendants= favorCit could
have decided, in its discretion, not to award attorney=s
fees.  See Dean, 240 F.2d at
511.  Because the trial court=s
resolution of all three factors, much less the basis for those resolutions, is
unclear, the defendants have not carried their burden of showing an abuse of
discretion.  See Smith, 195 S.W.3d
at 304.








The defendants argue that the reasoning in Smith
is inapplicable to this case because our interpretation of TCHRA, unlike our
interpretation of the civil practice and remedies code, must be guided by
existing federal case law on the equivalent federal statute.  But none of the federal or Texas cases cited
by the defendants involved the situation presented here, namely, appellate
review of a trial court=s discretionary denial of
attorney=s fees
when the basis for the denial is not clear from the record.  See, e.g., Butler, 2004 WL 389101, at
*6B7
(explaining why the trial court was exercising its discretion in
favor of awarding fees); Elgaghil, 45 S.W.3d at 144B45
(reviewing trial court=s exercise of discretion to award
attorney=s fees
under TCHRA).  In the absence of other
controlling or persuasive authority applicable to the case before us, it is
fitting that we turn to our own precedent, Smith, for guidance.

We hold that the defendants have not shown that
the trial court abused its discretion by denying their motion for TCHRA
attorney=s fees,
and we overrule their sole issue.

                                             Conclusion

Having overruled Blackwell=s fourth
issue, not having reached his remaining issues, and having overruled Powell,
Playoff, and Donruss=s sole issue, we affirm the
trial court=s judgment.

 

 

ANNE
GARDNER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and MCCOY, JJ.

 

DELIVERED:  October 29, 2009











[1]The Aentities contemplated to
be formed@ are, according to
Blackwell,  Donruss Playoff, L.P. and
Donruss LLC (collectively, ADonruss@).





[2]Blackwell suggests that
the meaning of fair market value and the method of calculating same are merely
ancillary aspects of the alleged agreement. 
We disagree because the 25% of the companies= fair market value dwarfs
the other consideration due under the alleged agreement.





[3]From the time of his
initial interview with Powell, Blackwell acknowledged, he wanted to pursue some
Aupside@ as well as an Aequity interest@ in Playoff, and his
discussions with Powell in that regard continued both before and after they
reached the oral agreement of 1999 as found by the jury.  Blackwell acknowledged that the oral
agreement did not give him an equity interest. 
Some three months after the handshake deal as found by the jury, he was
again proposing an equity deal.  He
emailed Playoff=s lawyers on March 23,
2000, proposing a limited partnership with an equity interest for himself, with
the value of Playoff to be determined Aby appraisal.@  

Blackwell=s efforts continued
through the next two years with proposals to accountants and lawyers of the
companies to provide him with an equity interest in the Playoff entities as
well as alternative bonus plans for payment of 25 percent of after-tax
distributions on sale or termination, virtually identical to the 1999 agreement
terms.  





[4]Blackwell also arguesCin two sentencesCthat the defendants
waived any indefiniteness in fair market value because they invited error by
requesting a jury question containing the termCa question identical to
the one the trial court actually submitted. 
This argument fails because even if the jury found (as it did) that
Blackwell and Powell entered into an employment agreement that referenced the fair
market value of the companies, whether the agreement is unenforceably
indefinite remains a question of law for the court.  See COC Servs., Ltd.,150 S.W.3d at
664.